FILED
2013 Sep-24  AM 11:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JEREMY ALLEN KIRBY | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:12-CV- 01145-KOB** |
| | ) | |
| **MICHAEL ASTRUE** | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On April 21, 2008, the claimant Jeremy A. Kirby applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. (R. 16). The claimant alleged disability beginning February 9, 2008 as a result of severe back pain. (R. 18). The Commissioner denied the claim initially on June 30, 2008. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held the hearing on March 3, 2010.  In an opinion dated April 22, 2010, the ALJ found that the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act, and, therefore, was ineligible for both a period  disability and disability insurance benefits. (R.16). The Appeals Council subsequently denied the claimant's request for review on February 16, 2012, and the ALJ's decision became the final decision of the Commissioner

1

of the Social Security Administration. (R. 1).  The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The court must review the following issues: (1) whether the ALJ properly applied the Eleventh Circuit's pain standard, and thus, properly discredited the claimant's subjective testimony of disabling back pain; (2) and whether the ALJ erred by failing to assign weight to the claimant's treating physicians and instead assigning great weight to the state agency consulting physician.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if substantial evidence supports the factual conclusions. *See* 42 U.S.C. § 405(g);  *Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including the determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 1999. However, this court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This court must "scrutinize the record in its entirety to determine the reasonableness of

the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must look not only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take into account evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which as lasted or can be expected to last for a continuous period of not less than 12 months." To make this determination, the Commissioner employs a five-step, sequential evaluation process:

 (1) Is the claimant presently unemployed?
 (2) Is the claimant's impairment severe?
 (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
 (4) Is the claimant unable to perform his or her former occupation?
 (5) Is the claimant unable to perform any other work within the national economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled".

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

When evaluating subjective complaints, such as pain, the Commissioner must apply the Eleventh Circuit's pain standard. The Commissioner must determine whether:

(1) there is evidence of an underlying medical condition; and either
(2) objective medical evidence confirming the severity of the alleged pain arising from the condition *or*
(3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). The ALJ does not have to recite the pain standard word for word; rather the ALJ must make findings that indicate that the standard was applied. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1992). The ALJ must articulate reasons for discrediting the claimant's subjective testimony. *Brown v. Sullivan*, 921 F.2d.1233, 1236 (11th Cir. 1991). If the ALJ does not articulate his reasons for discrediting, then the court must accept the claimant's testimony as true. *Id.*

Further, in evaluating pain and other subjective complaints, the Commissioner may consider the claimant's ability to perform certain activities of daily living (ADLs), as well as the impact of such activities on the claimant's credibility. 20 C.F.R. §§ 404.1529 (c)(3)(i), 416.929(c)(3)(i); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding that ADLs may be relevant to the fourth step of the sequential process).

Finally, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). The opinions of reviewing non-examining physicians do not constitute substantial evidence on which to base an administrative decision. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir 1988). However, the ALJ can rely on non-examining physician's reports in denying disability insurance benefits where the non-examining physician's report does not contradict information in the examining physician's report. *Edwards v. Sullivan*, 937 F.2d 580, 585 (11th Cir. 1991). The ALJ must state with particularity the weight given different medical opinions and the reasons

4

therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## V. FACTS

The claimant has a high school education and was thirty-six years old at the time of the administrative hearing. (R. 41). The claimant has past work experience as a water plant operator, water plant maintenance repairer, and laborer for a lumber company. (R. 138-39).  The claimant alleges that he was disabled by severe back pain beginning February 9, 2008. (R. 16).

*Physical Limitations*

In 1998, the claimant suffered a back injury that was not work-related, resulting in back surgery for a ruptured disc that year. (R. 401,589-99). On September 24, 1998, the claimant requested to return to work. (R. 389).

In May 2000, the claimant suffered a work-related back injury while working on a poultry valve, rupturing a disc.  On May 23, 2000, Dr. Frank Haws performed another surgery to remove the extruded disc. (R. 385, 582-86).

The claimant subsequently received pain management treatment for chronic pain and lumbar radiculopathy from 2001 through 2006 from Dr. Morris L. Scherlis. Dr. Scherlis administered epidural injections every three months to relieve pain. The claimant continued to work while seeing Dr. Scherlis and receiving treatment for his pain. (R. 543-80).

In January of 2006, the claimant re-injured his back at work while lifting a barrel of acid weighing approximately 30 pounds. (R. 402). On January 4, 2006 the claimant went to the emergency room, complaining of pain from the injury, and reported to the physician that he believed he had another ruptured disc. (R. 444). On February 6, 2006, Dr. John Johnson

diagnosed the claimant with recurrent disc herniation with nerve root compression, and performed surgery including a discectomy and a 360-degree fusion. (R. 343, 402).

Since the 2006 surgery, the claimant has complained of recurring back and leg pain. The claimant continued to see Dr. Scherlis for pain management and pain medication through 2010. (R. 446-75, 615). Dr. Scherlis consistently noted the claimant ambulated without assistance and with a steady gait. (R. 629).

On May 30, 2006, the claimant had a neurosurgical follow up with Dr. Johnson, who reported that he saw no role for further surgical treatment and encouraged claimant to continue physical therapy. Dr. Johnson also noted that he would allow him to return to work after an impairment rating and evaluation by Dr. Keith C. Anderson, a certified independent medical examiner (C.I.M.E.). (R. 400).  Dr. Johnson planned to see the claimant back in the clinic for a 6 month follow up. (R. 361).

Dr. Anderson saw the claimant on June 27, 2006 for a functional capacity evaluation and impairment rating. Dr. Anderson placed the claimant in aggressive physical therapy, including work hardening.  Dr. Anderson reported that the claimant reached the stage of maximum medical improvement (MMI) for his low back. Dr. Anderson also reported that further medical or surgical intervention is unlikely to improve the patient's condition. Dr. Anderson concluded that the claimant had a 20% impairment of the whole person regarding his work-related injury. (R. 399). On July, 31, 2006, the claimant reported that as a result of the surgery his leg pain improved but his back pain persisted. The claimant described a dull aching sensation that became progressively worse throughout the day, but stated that it was not as severe as prior to surgery. (R. 401).

On October 16, 2006, the claimant went to the Lawrence Medical Center Emergency

6

Room, complaining of pain in his back and right hip. The emergency room administered temporary pain medicine and advised the claimant to see his pain doctor. (R. 436-38).

After the last surgery in 2006, the claimant received caudal catheter injections for pain on August  25, 2006; November 8, 2006; February 9, 2007; May 14, 2007; August 16, 2007; November 27, 2007; February 28, 2008; June 23, 2008; September 24, 2008; January 7, 2009; April 7, 2009; August 10, 2009; November 12, 2009; February 4, 2010; and March 10, 2010. (R. 447-70, 639-60). The claimant's most recent lumbar myelogram from September 2007 showed normal results. (R. 518). On August, 22, 2007, the claimant stated that he "was not really interested in a lot of additional surgeries." (R. 464).

On April 10, 2008, the claimant visited family practitioner Dr. Don E. Beach for a physical examination and complained of low back pain. Dr. Beach saw the claimant only once since he began treatment at the pain clinic, in 2007, for treatment of a kidney stone. (R. 480). In the 2008 visit, Dr. Beach noted that the claimant had diminished disc space between two discs and that the other disc spaces were well-preserved. Dr. Beach diagnosed the claimant with lumbago. (R. 479, 496). Dr. Beach referred the claimant to Dr. Scherlis for continued pain management treatment.

On October 1, 2009, Dr. Scherlis saw the claimant for a clinic visit. The claimant reported that the spinal injections always help him and give him four to eight weeks of relief. The claimant reported that the pain slowly returns and that he uses a spinal cord stimulator intermittently to help relieve pain. The claimant continued to complain that his overall pain level was 8 or 9/10, but stated that he obtained temporary relief as a result of the treatments. (R. 645, 641-58).

On April 22, 2008, the claimant completed his application for disability and disability benefits with the Social Security Administration. The application contained a functional assessment questionnaire. On the form, the claimant stated that his ADLs included going to his children's church and school activities, and trying to walk short distances a couple of times a day with the assistance of his cane.  He stated that his condition limited the amount of time he can stand or sit; the pain usually keeps him from sleeping regularly;  he can prepare simple meals, but that his mother and older daughter prepare most meals; he does not require assistance for personal care other than occasional help with socks and shoes; and he lives with his parents and receives help in caring for his two children. The claimant reported that he can walk short distances with his pain for approximately ten minutes before having to stop, and has limited ability to bend, squat, lift, climb, or kneel. The claimant stated that he attends church, drives, picks his children up from school and attends school functions when he can. The claimant also indicated that the medications he takes affect his concentration and ability to think clearly. The claimant stated that he spends a lot of his day lying down and resting due to his condition. (R. 147-54).

On June 30, 2008, Dr. Stuart X. Stephenson, M.D. completed the physical RFC assessment as the state agency's medical consultant. Dr. Stephenson reviewed appropriate treating and examining source statements regarding the individual's capacities. Based on Dr. Stephenson's review of the records, he concluded that the claimant has an L5-S1 rupture with fusion, lumbar radiculopathy, and spondylosis. Dr. Stephenson found the claimant had the following exertional limitations: can occasionally lift and/or carry up to 20 lbs; can frequently lift and/or carry up to 10 lbs; can stand and/or walk for a total of about 6 hours in an 8-hour

8

workday; can push and/or pull unlimited, other than as shown for lift/carry. He also concluded

that the claimant could occasionally climb ramps or stairs; balance; stoop; kneel; and crouch.

However, Dr. Stephenson found the claimant could never climb ladders, ropes, or scaffolds. Dr.

Stephenson next found that the claimant had no manipulative limitations, no visual limitations,

or communicative limitations. Dr. Stephenson indicated that the claimant should avoid all

hazards and concentrated exposure to extreme heat/cold and vibration. He also concluded that the

claimant could have unlimited exposure to wetness, humidity, noise, and odors. Dr. Stephenson

found that the claimant's MDIs (medical diagnostic images) were consistent with his allegations

of back injury and right leg pain, but that while the claimant's MDI's could reasonably be

expected to produce some limitations, they would not produce all of his alleged functional

limitations. Dr. Stephenson concluded that the claimant was partially credible for his allegations

compared to the objective findings in the Medical Electronic Record (MER). Lastly, Dr.

Stephenson indicated that his conclusions were not significantly different from the treating

physician's conclusions. (R. 601-08).

### *The ALJ Hearing*

The Commissioner denied the claimant's applications for disability and disability

insurance benefits on February 8, 2008. (R. 74). The claimant requested a hearing before an ALJ,

and the ALJ held the hearing on March 3, 2010. (R. 36).

The claimant testified that his disability resulted from severe back pain. The claimant

stated that Dr. Don E. Beach diagnosed him with lumbago in April 2008, and he continued to

seek pain management treatment from Dr. Scherlis. The claimant testified that he was not

currently working because did not feel capable of working after his last surgery on January 4,

2006. (R. 43). The claimant indicated that his disability began on February 9, 2008. (R. 38). The claimant testified that his first back surgery in 1998 was great and that he functioned at almost 100% after recovery. (R. 53). The claimant also reported that after his disc ruptured again in 2000, he had continual problems with his back. The claimant testified that the epidurals help and sometimes provide relief for a month at a time, but that he is never completely pain free. (R. 51).

Regarding his financial condition, the claimant testified that his parents helped him financially with living expenses and with the care of his children. The claimant stated that he was able to drive his truck; take his children to school sometimes; but was unable to do any regular chores. The claimant also testified that he did not smoke cigarettes or drink alcohol. (R. 41-43).

The claimant stated that he had trouble sitting for long periods of time and that he changed positions often.  The claimant testified that he used the assistance of a cane to walk and can only stand for 10-15 minutes at a time. (R. 44). The claimant stated that his right leg is very weak; that he has problems with balance; and that he is without complete feeling in his right leg. The ALJ asked the claimant if he could do a job that allowed him to sit and stand whenever he wanted, such as a gate guard, and the claimant testified that he could as long as he could change positions and take his current medications.

Because of discomfort in his back, the claimant asserted that he laid down at least three-fourths of the day. During the day, the claimant stated that he watches tv and reads. The claimant stated that he does not sleep much during the night and is up and down continuously. The claimant reported that he could dress himself and that his personal care was not an issue. The claimant also testified that he takes about five minutes to get dressed and go to the kitchen.

When asked what he did on a typical day, the claimant stated "Not very much." (R. 49).

10

The claimant stated that he lived with his parents and two daughters, ages sixteen and seven at the time of the hearing. The claimant testified that he cares for his children with the help of his mother. (R. 42). When his children are in school, claimant testified that his mother usually takes them to school in the morning and that he tries to pick them up in the afternoon when he is able. (R. 51). The claimant testified that his mother prepares meals for his children, and that the sixteen-year-old child is able to contribute to caring for the younger child. The claimant stated that he did not drive much at all. The claimant testified that he takes pain relievers, muscle relaxers, and sleep aids for pain and muscle spasms associated with his condition. (R. 45).

The ALJ then examined Patsy Bramlett, the vocation expert. Ms. Bramlett testified that the claimant had three sources of income in the previous fifteen years: water treatment plant operator; maintenance repairer in water treatment; and material handler for a lumber company. Ms. Bramlett classified these jobs as skilled, skilled, and lower semi-skilled, respectively. Ms. Bramlett stated that the claimant's earliest job as a materials handler for a lumber company was a heavy job, while the two most recent jobs at the water treatment plant were medium jobs.

The ALJ then asked Ms. Bramlett if a hypothetical individual with the claimant's same age, education, work history as the claimant who could perform light exertion and required a sit/stand option could perform the claimant's prior work. The ALJ instructed Ms. Bramlett to assume the following limitations for the hypothetical individual: could occasionally lift or carry, including pulling up to 20 pounds; could  frequently lift and/or carry, including up to 10 pounds; could stand or walk with normal breaks for a total of around six hours in an eight hour work day; could occasionally, up to one-third of the day, climb ramps and stairs, balance, stoop, kneel, and crouch; could never work on ladder, ropes, or scaffolds; must avoid concentrated exposure to

11

extreme cold/heat and vibration jobs; and must avoid unprotected heights and hazardous machinery. Ms. Bramlett stated that the claimant would not be able to return to any prior work because the claimant's prior work was either medium or heavy. (R. 55-56). Ms. Bramlett stated that none of the skills associated with the claimant's prior positions were transferable to a job below a medium level.

However, Ms. Bramlett identified three jobs that are classified as unskilled at a light exertion level that such an individual could perform: an assembler; an inspector; and a sorter slash packer. Ms. Bramlett testified that all of these positions existed in significant numbers in both the national and state economy. (R. 57).

The ALJ then presented another hypothetical to Ms. Bramlett, including the same limitations as provided in the first hypothetical, and adding an at will sit/stand option as well as the ability to only occasionally lift 10 pounds. Ms. Bramlett identified three positions that are sedentary and unskilled that would accommodate the additional limitations: an inspector (different than the inspector position identified above); a sorter; and a table worker. Ms. Bramlett testified that all of these positions existed in significant numbers in both the national and state economy. Ms. Bramlett also stated that none of the jobs listed for any of the above hypotheticals require crouching. (R. 57-58).

The claimant's attorney then questioned Ms. Bramlett about a hypothetical worker who found it necessary to lie down for two hours per day or more. Ms. Bramlett testified that these jobs would not permit such a requirement and that the requirement would eliminate all job options. (R. 60).

12

*The ALJ Decision*

On April 22, 2010, the ALJ issued a decision finding that the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act denying his application for a period of disability and disability insurance benefits. (R. 23). Before announcing his findings of fact, the ALJ described in great detail the five-step sequential evaluation process that would be the basis of his analysis. (R. 17).

First, the ALJ found that the claimant met the insured status requirement of the Social Security Act through June 30, 2011. The ALJ found that the claimant had engaged in no substantial gainful employment since February 9, 2008, the alleged onset date of his disability.

Next, the ALJ found that the claimant had severe impairments of post L5-S1 rupture with fusion, lumbar radiculopathy, and spondylosis. Although the claimant periodically complained of severe back pain, the ALJ found that the claimant's pain was not an impairment that met one of the listed impairments and was not totally disabling. The ALJ noted that Dr. Beach's examination, including range of motion testing in April 2008, showed normal results and that Dr. Beach referred the claimant to Dr. Scherlis for continued pain management.

Similarly, the ALJ evaluated the claimant's pain management treatments, finding that Dr. Scherlis consistently noted the claimant ambulated without assistance; had a steady gait; and had a normal range of motion of the back. (R. 19). The ALJ noted that the claimant reported the epidurals give him relief for 2 to 3 months, as well as getting intermittent relief from the stimulator. Further, the ALJ noted that his last lumbar myelogram in September 2007 was normal. (R. 19).

The ALJ then found that the claimant did not have an impairment or combination of

13

impairments that met or medically equaled one of the listed impairments. The ALJ articulated found that the claimant's impairments did not meet the criteria in section 1.04 of Appendix 1 of the listings because the record fails to show that the claimant's impairments are attended by any of the findings specified.

The ALJ then undertook to determine the claimant's residual functional capacity (RFC). The ALJ concluded that the claimant had the RFC to perform a range of light work with the following limitations: can frequently lift 10 pounds and occasionally lift 20 pounds; must have a sit/stand option; can occasionally climb ramps/stairs, balance, stoop, and kneel; cannot crouch; can never climb ladders/ropes, or scaffolds; must avoid cold/heat and vibration; and must avoid all exposure to unprotected heights and hazardous machinery.  In arriving at this RFC, the ALJ applied the Eleventh Circuit's pain standard and considered whether the claimant exhibited a medically determinable physical or mental impairment. Second, the ALJ considered the "intensity, persistence, and limiting effects" of the claimants impairment, and the extent to which the impairments affected the claimant's functioning. Absent objective medical evidence, the ALJ announced that he would evaluate the credibility of the claimant's statements against the weight of the entire record. (R. 19).

The ALJ discounted the claimant's allegations of pain based on objective medical evidence in the record and also the claimant's activities of daily living. The ALJ found that although the claimant's medically determinable impairments could reasonably cause the symptoms described by the claimant, his statements were not credible to the extent that they were inconsistent with the claimant's questionnaire that assessed his own functional capacity and medical history.  The ALJ noted that while the claimant complains of significant pain, the most

recent myelogram was normal.  Further, the ALJ noted that both Dr. Beach and Dr. Scherlis noted on examinations that the claimant had a normal gait and range of motion of the back. The ALJ also considered that the medical records indicated that the claimant has 2 to 3 months of pain relief following the epidural injections and also indicated that the stimulator provides additional relief. The ALJ noted that not only did Dr. Scherlis's medical records indicate that he did not think the claimant would benefit from any additional surgery, but also that the claimant was "not really  interested in a lot of additional surgeries."

The ALJ articulated that while the claimant alleges difficulty concentrating as a result of his medications, his treatment records did not corroborate those allegations. The ALJ further found that Dr. Scherlis noted no side effects of medications. (R. 20, 626). The ALJ remarked that neither Dr. Scherlis nor any other physician opined that the claimant was disabled or recommended any restrictions.

The ALJ also remarked that the claimant's daily activities were inconsistent with his allegations of disabling pain and side effects of medication, but were fully consistent with the claimant's residual functional capacity described above. Considering that the claimant attends school functions, prepares simple meals, cares for his children, drives, shops, picks up his children at school, and attends church, the ALJ found that the claimant was limited but able to perform at least some type of work activity.

The ALJ gave significant weight to Dr. Stephenson, the state agency medical consultant's opinion that the claimant could perform a range of light work, emphasizing that no physician, treating or examining, indicated that the claimant was disabled or even had limitations preventing him from performing a light range of work. The ALJ found the medical record credible as a

15

whole, as it was consistent with the medical consultant's findings. However, the ALJ did not state what weight, if any, he gave Dr. Scherlis or Dr. Beach.

After determining that the claimant had the RFC to perform light work,  the ALJ found that the claimant was unable to perform his past relevant work. The vocational expert testified that a hypothetical individual with the claimant's age, education level, vocational background, and RFC could not successfully perform any of his past relevant work. The ALJ also found that the claimant was considered a younger individual, with at least a high school education, and had the ability to communicate in English. (R. 21).

The ALJ next noted that the transferability of the claimant's job skills was not material to the determination of disability, as the use of the Medical-Vocational Guidelines as a framework supported a finding that the claimant was not disabled. The ALJ also found that given the claimant's age, education level, work experience, and RFC, and based on Ms. Bramlett's testimony, a significant number of jobs existed in the national economy that the claimant could perform. Therefore, the ALJ found that the claimant had not been disabled under the Social Security Act, from the time of application on February 9, 2008 through the date of the decision on April 22, 2010.

## VI. DISCUSSION

### 1. The ALJ properly applied the Eleventh Circuit's pain standard

The claimant alleges that the ALJ improperly applied the Eleventh Circuit's pain standard and improperly discredited the claimant's own testimony. This court finds that the ALJ properly applied the Eleventh Circuit's pain standard and properly discredited the claimant's own testimony by referring to various ADL's the claimant routinely performed.

16

When a claimant attempts to establish his disability through testimony of subjective

symptoms, the Eleventh Circuit's pain standard applies. The pain standard requires a showing of

> (1) evidence of an underlying medical condition; and *either*
> (2) objective medical evidence that confirms the severity of the alleged pain arising
> from the condition *or*
> (3) that the objectively determined medical condition is of such severity that it can
>  be reasonably expected to give rise to the alleged pain.

*Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (emphasis added); *see also Holt*, 921

F.2d at 1223. Pain alone can be disabling, and in some circumstances a claimant's subjective

testimony, supported by medical evidence that satisfies the pain standard, can be sufficient to

support a finding of disability. *Foote*, 67 F.3d at 1561. The ALJ is not required to recite the pain

standard verbatim, but must make findings indicative of a correct application of the standard. *See*

*Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). When the ALJ decides to discredit the

claimant's testimony of pain, he must do so explicitly, and with adequate reasons. *Id.* In

discrediting the claimant's complaints of pain, the ALJ may consider the claimant's ADLs. *See*

*Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

In his decision, the ALJ correctly applied the Eleventh Circuit's test to the facts in this

case. The ALJ found that the claimant did have medically determinable impairments that could

reasonably be expected to cause the claimant's pain. However, the ALJ properly discredited the

claimant's personal testimony as being against the great weight of medical evidence in the

record. Although the claimant identified severe back pain as his disabling condition, the ALJ

articulated that the claimant's records reflect that he obtains relief for 2 to 3 months at a time as a

result of pain management treatment and that he had adequate pain relief as of 2010.  The ALJ

further noted that the most recent lumbar myelogram was normal, and that the claimant has a

normal range of motion of the back and a normal gait. (R. 19). The ALJ referred to the claimant's functional assessment questionnaire and recounted that the claimant claimed that he prepared small meals, cared for his children, shopped, drove, picked up his children at school, and attended church. The ALJ appropriately relied on these ADLs in concluding that the claimant was not severely impaired.

In identifying specific portions of the claimant's medical records, and referring to the claimant's own testimony about completing various ADLs, the ALJ properly articulated explicit, adequate reasons to discredit the claimant's pain testimony. Also, the ALJ properly discredited the claimant's testimony by weighing both the medical findings of the consulting physician supported by objective medical evidence in the record, and his performance of various ADLs against his personal testimony.  Thus, the ALJ correctly applied the Eleventh Circuit's pain standard, and substantial evidence supports his findings.

The claimant also argues that the ALJ improperly placed undue significant emphasis upon the claimant's daily activities. The court finds that the ALJ properly considered the daily activities of the claimant in rendering his decision that the claimant's subjective complaints of totally disabling back pain were not supported by the objective medical evidence of record.

 The court notes that while the ALJ's determination of subjective pain did consider the claimant's ADLs, the ALJ also emphasized that no treating or examining physician indicated that the claimant was disabled or had limitations greater than those determined by his decision. The claimant argues that the ALJ incorrectly concluded that because of his limited daily activities, the claimant would be able to perform work activity. However, the ALJ may consider daily activities when discrediting a claimant's credibility. *Dyer v. Barnhart*, 395 F.3d 1206, 1209 (11th Cir.

18

2005). The ALJ placed no more emphasis on the claimant's ADLs than he did on the treating

physician's records and notes of examination. Because no objective evidence exists in the

medical record that indicated any treating physician's conclusion was that the claimant was

disabled, the ALJ appropriately considered the claimant's ADLs. The ALJ considered the

claimant's ADLs in discrediting the claimant's subjective testimony in accordance with the

proper legal standard and precedent.

### 2. ALJ Assigned Great Weight to the Consulting Physician's Opinion

Although the claimant did not raise this issue, the court notes that the ALJ assigned great

weight to the consulting physician's report and assigned no weight to the examining physician's

report. The ALJ must state with particularity the weight given to different medical opinions.

*Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ must give treating physicians

substantial weight, and he may only credit the opinion of a consultative physician above that of a

treating physician  for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir.

2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "When, however, an incorrect

application of the regulations results in harmless error because the correct application would not

contradict the ALJ's findings, the ALJ's decision will stand." *Caldwell v. Barnhart*, 261 F.

App'x 188, 190 (11th Cir. 2008).

The ALJ failed to assign the treating physicians any weight. While the ALJ discussed the

findings of Dr. Scherlis and Dr. Beach, he did not state the weight he afforded their opinions as

treating physicians. However, the court finds that the ALJ's error was harmless because the

treating physicians' opinions do not contradict the ALJ's conclusion. The ALJ correctly

concluded that the claimant had a post L5-S1 rupture with fusion, lumbar radiculopathy,

spondylosis, and could perform a light range of work. Both physicians diagnosed the claimant with these impairments. Most importantly, neither Dr. Scherlis nor Dr. Beach found that the claimant was totally disabled and unable to work. Even had the ALJ correctly given great weight to Dr. Scherlis's and Dr. Beach's opinions, the ALJ's determination would have been the same.

The ALJ improperly gave "great weight" to the state agency medical consultant's assessment without explaining why. However, because the Dr. Stephenson's opinion does not contradict the findings of Dr. Scherlis or Dr. Beach that the claimant could perform limited work activity, the ALJ committed a harmless error.  All physicians recognized that the claimant's conditions partially limit the claimant's ability to work. However, no physician concluded that the claimant was totally disabled and unable to perform any work activity. Further, as discussed above, the totality of the record provided substantial evidence to support a finding that the claimant could perform a light range of work, limited to occasional lifting/climbing with a sit/stand option.  Because the ALJ's incorrect application of weight to the consulting physician's opinion would not contradict the ALJ's findings, and the ALJs findings are supported by objective medical evidence in the record, this court finds that the ALJ's decision should stand.

## VII. CONCLUSION

For the reasons stated, this court finds that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court simultaneously will enter a separate Order to that effect.

DONE and ORDERED this 24th day of September, 2013.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE